# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SIMON PROPERTY GROUP, INC.,**

    **Plaintiff,**

-vs-                                                                                      Case No. 6:11-cv-1598-Orl-31KRS

**LYNNETTE LAURIA; ROBERT JAMES LAURIA; SARAH LAGI; et al.,**

    **Defendants.**

## ORDER

This cause comes before the Court on nine (9) Motions to Dismiss (Docs. 114 - 122) filed by Defendants Ryan Deming (Doc. 114), DT Printing Solutions, LLC (Doc. 115), Event Planners USA, Inc. (Doc. 116), Hat Marketing, LLC (Doc. 117), Image Marketing Group, Inc. (Doc. 118), Image Marketing of Florida, LLC (Doc. 119), Pointe Distribution, LLC (Doc. 120), Dale Takio (Doc. 121), and Takitik, Inc. (Doc. 122). Plaintiff Simon Property Group, Inc. has filed two Responses (Docs. 138 and 139).

## I. Background

The following facts are alleged in the Amended Complaint (Doc. 63) and are taken as true for the purpose of ruling on the instant Motions. Plaintiff Simon Property Group, Inc. ("Simon") owns and operates malls and retail centers throughout the United States. Defendant Lynnette Lauria ("Lauria") began her employment with Simon as a marketing director at a mall in New Hampshire. In 2000 she was transferred to the Florida Mall in Orlando, Florida, where she continued to serve as marketing director. By June 2007, she was promoted to the position of "Vice-President for Mall

Marketing for the Florida and Puerto Rico Regions"–a position she held until July 2011. (Doc. 63 at 7). As relevant to the instant case, Lauria's job entailed negotiating service agreements and overseeing the efforts of outside marketing and advertising companies in the region.

Simon's internal policies required that Lauria avoid a "variety of conflicts of interest" in performing her duties, including that she refrain from transacting business with related persons. To enforce these policies Simon required compliance with "certain processes." For transactions under $5,000.00, for example, Lauria was required to "document and support all decisions made, including why vendors and suppliers were chosen." (Doc. 63 at 9).[1] According to the Amended Complaint, however, Lauria used her position at Simon to divert marketing and advertising business to fictitious companies she controlled or to companies which provided her special kickbacks. In either case, Simon was charged "exorbitant fees for little to no services." (Doc. 63 at 13).

As best the Court can tell, Defendants are divided into four categories: (1) Lauria, her husband (Robert James Lauria) and their two daughters (Rachael Lauria and Sarah Lagi); (2) companies formed for the purpose of defrauding Simon and controlled by Lauria's family (the "Lauria Companies"); (3) companies not controlled by Lauria or her family, but nonetheless paid Lauria kickbacks for the business she awarded (the "Image Companies" or "Image Defendants"); (4) the three individual Defendants that controlled the Image Companies, Ryan Deming, Dale Takio, and Timothy Herman.

The Amended Complaint (Doc. 63) asserts seven causes of actions against Defendants: breach of fiduciary duty against Lauria only (Count I); aiding and abetting breach of fiduciary duty against

---

[1] As the value of the product or service increased, so did the scrutiny. For any transaction over $5,000.00 for example, Lauria was required to submit a formal proposal and gather at least three competitive bids. (Doc. 63 at 9). The Amended Complaint alleges that all the suspect transactions were below the $5,000.00 level to avoid increased scrutiny.

Lauria and several other individual Defendants (Count II); fraud against all Defendants (Count III); civil conspiracy against all Defendants (Count IV); conversion against all Defendants (Count V); civil theft under Fla. Stat. § 772.11 against Lauria and her family members (Count VI); two Counts of violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1964(c), 1962(c), and 1962(d), against all individual Defendants (Counts VII and VIII); and violation of the Florida Antiphishing Act, Fla. Stat. § 668.703, against Herman only (Count IX).

The instant Motions involve only nine of the more than two dozen Defendants: Deming, Takio, and seven of the fourteen Image Companies. Each now move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and the "shotgun pleading rule." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). (*See, e.g.,* Doc. 114 at 14). The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a)(1).

## II. Standard

### A. Motions to Dismiss

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

**B. Shotgun Pleadings**

Generally speaking, shotgun pleadings "are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). Shotgun complaints

> invariably begin with a long list of general allegations, most of which are immaterial to most of the claims for relief. The general allegations are incorporated by reference into each count of the complaint; the complaint is followed by an answer that responds to each and every statement. If the trial judge does not quickly demand repleader, all is lost – extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits.

*Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

> [I]t is much easier in the short term to permit shotgun pleadings – in the hope that the parties will settle their dispute – instead of intervening sua sponte to narrow the issues. In the long term, however, the judicial work that results from shotgun pleading is far more time consuming than the work required up front to prevent the case from

> proceeding beyond the pleadings until the issues are reasonably well defined. As we have previously stated, and state once again, district courts have the power and the duty to define the issues at the earliest stages of litigation.

*Id*.

Under the Federal Rules of Civil Procedure, a defendant faced with a shotgun complaint is not expected to frame a responsive pleading. Rather, the defendant is expected to move, pursuant to Rule 12(e),[2] to require the plaintiff to file a more definite statement. *Anderson v. Board of Trustees of Cent. Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996). If, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene sua sponte and order a repleader. *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001). This duty to intervene sua sponte applies whether the court is faced with a shotgun complaint or a shotgun answer. *Id.* at 1133, n.114.

> Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice. The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard. Wasting scarce judicial and parajudicial resources impedes the due administration of justice and, in a very real sense, amounts to obstruction of justice.

*Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001) (internal quotation omitted).

---

[2] Rule 12(e) states: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just."

**III. Analysis**

Although there are nine separate motions to dismiss, they are virtually identical and do not merit individual discussion.[3] Accordingly, the Court will divide its analysis into three parts, beginning with Defendants' argument that the Amended Complaint is a shotgun pleading–reprinted almost exactly in each of the nine Motions. The second part will discuss the arguments of the Image Defendants, while the third will discuss the Motions filed by Deming and Takio.

**A. Shotgun Pleading**

Initially, it must be noted that Defendants' motion to dismiss the Amended Complaint as a shotgun pleading is procedurally improper. Eleventh Circuit precedent instructs that the proper procedure when confronted with a shotgun pleading is to move for a more definite statement under Rule 12(e). *Anderson*, 77 F.3d at 366. Regardless, on its face the Amended Complaint is not a shotgun pleading–it does not "incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."[4] *Wagner*, 464 F.3d at 1279. Defendants' argument appears[5] to be based on two things, Plaintiff's repeated reference to "Defendants" generally–or the consolidation of

---

[3] The Court notes that Defendants' repetitive motions present a much greater threat to the efficient administration of justice than the Amended Complaint–which they seek to have dismissed as a shotgun pleading. Refiling virtually the same motion nine times serves no purpose other than to waste "scarce judicial and parajudicial resources." *Byrne*, 261 F.3d at 1131.

[4] Plaintiff concedes that Count II does incorporate the allegations in the previous Count, but only because Count II (aiding and abetting breach of fiduciary duty) is dependant on the allegations in Count I (breach of fiduciary duty).

[5] Defendants do not make a clear argument in this respect. Rather, the rely on several lengthy "examples" from the Amended Complaint, and some general case cites.

Defendants into "arbitrary" groups, such as the "Image Companies"[6]–and the length and complexity of the Amended Complaint itself.

While there may be cases where grouping together defendants is problematic, this is not such a case. *See e.g.*, *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001)(noting that among other problems, "[t]he complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."). The instant Amended Complaint does group together Defendants, but only after a detailed explanation of the fraudulent scheme and the various parties' affiliation with it. The heading of each Count is limited to the specific Defendants to which it applies. Finally, there is nothing about the length of the Amended Complaint that is improper. It appears to be lengthy and complex as a result of the size and complexity of the alleged scheme. As such, Defendants' Motion to Dismiss the Amended Complaint as a shotgun pleading will be denied.[7]

**B. Image Defendants' Motions to Dismiss**

The Image Company Defendants move to dismiss Counts III, IV and V (the only Counts they are named in) based on several arguments, each will be addressed in turn.

*1. The Ad Damnum Clause*

It is undisputed that the ad damnum clauses in Counts III, IV, and V fail to demand relief from the Image Defendants by name. Defendants argue that this error requires dismissal for failure to

---

[6] This argument appears throughout the Motions. In every incarnation, however, it is meritless.

[7] To the extent Defendants move for a more definite statement under Rule 12(e), that motion is denied as well.

comply with Rule 8. Plaintiff argues, however, that it is clear from the body and title of each Count that relief is demanded from "All Defendants" despite the clerical error in the ad damnum clauses. Regardless, however, Plaintiff agrees to "interlineate the [Image] Defendants specific names into the ad damnum clause . . . because any omission . . . was purely a clerical error." (Doc. 139 at 11). As such, Plaintiff will be granted leave to amend Counts III, IV, and V to remedy the infirmity.

*2. Count III - Fraud*

Defendants argue that Count III is barred by the economic loss rule because their relationship with Simon is based in contract. (*See, e.g.,* Doc. 115 at 12). Simon responds that no such contracts existed, but even if they did, they were invalid as the product of fraud. (Doc. 139 at 13). Under Florida law, the economic loss rule prohibits actions in tort to recover purely economic damage between parties in contractual privity. *Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). As the Supreme Court of Florida explained,

> Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

*Id.* at 536-37. Even where a contract exists, "[t]he economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts

-8-

considered to be independent from the acts that breached the contract." *Pershing Indus., Inc. v. Estate of Sanz*, 740 So. 2d 1246, 1248 (Fla. 3d DCA 1999).

In this case, the Amended Complaint makes no mention of any valid contracts and does not seek any contractual remedies. Rather, it alleges that the Image Companies were complicit in a scheme to defraud Simon. The economic loss rule does not apply to this claim merely because contracts–which are all allegedly fraudulent–were part of the scheme.[8]

*3. Count IV - Civil Conspiracy*

In Florida, "[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Defendants argue that the Amended Complaint fails to sufficiently allege the existence of an agreement between Defendants to participate in a specific civil conspiracy. (*See, e.g.,* Doc. 115 at 13).[9] In support of this argument, Defendants rely solely on *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly* for the proposition that allegations must be plausible, not merely conceivable. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

---

[8] Even assuming that valid contracts did exist, Plaintiff alleges that Defendants engaged in intentional acts independent from any contractual breach.

[9] Additionally, Defendants argue that Count IV was mispled because it joins "multiple separate purported civil conspiracies against separate groups of two or more Defendants in one count entitled civil conspiracy." *Id.* This argument is merely a restatement of the arguments addressed above and will be rejected for the same reasons.

Although the Amended Complaint does not allege that a specific meeting occurred between the Defendants, when read as a whole–and taken as true for ruling on the instant motions–it sets forth sufficient facts to state a claim for civil conspiracy. Defendants, again, appear to take issue with the generalized nature of the allegations, insisting that allegations regarding a specific agreement between each party is necessary. Other that this conclusory statement, however, Defendants present no compelling argument.

*4. Count V - Conversion*

Conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing *Thomas v. Hertz Corp.*, 890 So.2d 448, 449 (Fla. 3d DCA 2004)). There are specific requirements with respect to the conversion of money.

> There is nothing in the nature of money as personal property which makes it an improper subject of conversion so long as it consists of specific money capable of identification. To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified. Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained.

*Florida Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So. 2d 1059, 1061 (Fla. 5th DCA 2002) (quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970)); *see also Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009); *Navid v. Uiterwyk Corp.*, 130 B.R. 594, 595 (M.D. Fla. 1991).

Based on an assumption that valid contracts exist, Defendants argue that "Plaintiff has clearly failed to plead a duty to keep the specific money intact," and that the claim is bared by the "specific

fund" requirement. (Doc. 115 at 14). Although Florida case law on the issue is not always clear, in *Bel-Bel Int'l Corp. v. Comm'ty Bank of Homestead*, the Eleventh Circuit explained "[t]he specific fund requirement is an exception to the general rule that an obligation to pay money cannot be enforced through an action for conversion." 162 F.3d 1101, 1109 (11th Cir. 1998) (citing *Capital Bank v. G & J Invs. Corp.*, 468 So. 2d 534, 535 (Fla. 3d DCA 1985)). This general rule is an expression of the principle that "an action in tort is inappropriate where the claim is based on a breach of contract." *Id.* (citing *Douglas v. Braman Porsche Audi, Inc.*, 451 So. 2d 1038, 1039 (Fla. 3d DCA 1984)). As alleged, there is no valid contractual relationship in this case between Simon and the instant Defendants; therefore, Simon's claim cannot be "characterized as an attempt to transform a breach of contract action into a tort action" and thus "not the type of claim to which the specific fund requirement was intended to apply." *Id*.

**C. Deming and Takio's Motions to Dismiss**

*1. Count II - Aiding and Abetting Breach of Fiduciary Duty*

The four elements for a claim of aiding and abetting a breach of fiduciary duty are: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this duty; (3) knowledge of the breach by the alleged aider and abetter; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. *S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Florida, Inc.*, 365 F. App'x 202 (11th Cir. 2010); 27 Fla. Jur 2d Fraud and Deceit § 17. Defendants argue that the Amended Complaint fails to allege that Defendants "knew what Ms. Lauria's fiduciary duty to Simon included." (Doc. 114 at 15). The Amended Complaint does allege, however, that Defendants "had knowledge that Ms. Lauria breached the fiduciary duty she owed to Simon." (Doc. 63, ¶ 166). Combined with the detailed general allegations, this is sufficient to survive a motion to dismiss.

*2. Counts III, IV, and V*

Deming and Takio make the same arguments with respect to Counts III, IV, and V that were made by the Image Defendants and addressed above. For the reasons stated above, Deming a Takio's Motions will be denied with respect to Counts III, IV, and V.

*3. Counts VII and VIII - RICO*

Defendants argue that Counts VII and VIII should be dismissed because Plaintiff fails to establish a "sufficient relationship" between Defendants to constitute "a group of individuals associated in fact." (Doc. 114 at 21). To establish a prima facie civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of § 1962; (2) injury to his or her business or property, and (3) a causal connection between the racketeering activity and the injury. *Avigan v. Hull*, 932 F.2d 1572 (11th Cir. 1991). The Amended Complaint alleges a predicate violation of §1962(c) which states,

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

and §1962(d) which states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "Enterprise," as it is used in the statute, is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961. The Amended Complaint includes sufficient allegations that Defendants were "associated in fact." (*See* Doc. 63, ¶¶ 140-151). Defendants' arguments to the contrary are without merit.

In light of the foregoing, it is

**ORDERED** that Defendants' Motions to Dismiss (Docs. 114, 115, 116, 117, 118, 119, 120, 121, and 122) are **GRANTED** with respect to the clerical error in the ad damnum clauses in Counts III, IV, and V, but **DENIED** in all other respects. Plaintiff may file a Second Amended Complaint by no later than Tuesday, June 5, 2012.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 29, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**